# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT K. RICKS,<br><br>            Plaintiff,<br><br>   v.<br><br>C. DAVIS,<br><br>            Defendant. | **Case No. 1:18-cv-01022-DAD-SKO (PC)**<br><br>**ORDER REQUIRING PLAINTIFF TO EITHER FILE FIRST AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND COGNIZABLE**<br><br>**(Doc. 1)**<br><br>**TWENTY-ONE (21) DAY DEADLINE** |

## INTRODUCTION

**A.**    **Background**

Plaintiff, Scott K. Ricks, is a former state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. This action, which was originally filed in state court, was removed to this court by Defendant, Correctional Officer C. Davis. (Doc. 1.) Plaintiff has stated cognizable claims for retaliation in violation of the First Amendment and based on his conditions of confinement in violation of the Eighth Amendment. Plaintiff may proceed on these claims. However, since Plaintiff may be able to state additional cognizable claims and filed this action in state court, he will be provided a form complaint for an action under section 1983 and opportunity to amend if desired.[1] Plaintiff may either file a first amended complaint **that does not exceed twenty-five (25) pages in length**, or advise the Court that he is willing to proceed only on the claims found cognizable herein.

---

[1] If Plaintiff files an amended complaint, he must comply with the standards and requirements set forth in this order.

**B. Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). If an action is dismissed on one of these three bases, a strike is imposed per 28 U.S.C. § 1915(g). An inmate who has had three or more prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, and has not alleged imminent danger of serious physical injury does not qualify to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g); *Richey v. Dahne*, 807 F.3d 1201, 1208 (9th Cir. 2015).

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987). A complaint must be dismissed if it lacks a cognizable legal theory or fails to allege sufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

**C. Summary of the Complaint**

Plaintiff, who is no longer incarcerated, complains of circumstances he experienced while incarcerated at Pleasant Valley State Prison ("PVSP"). (Doc. 1, pp. 6-58.)[2] Plaintiff names

---

[2] All references to pages of specific documents pertain to those set forth on the upper-right corners as a result of the CM/ECF electronic court docketing system.

Correctional Officer C. Davis as the only defendant in this action and seeks compensatory and punitive damages.

Plaintiff alleges that on May 26, 2015, Defendant entered his cell and told Plaintiff he was going to administrative segregation for threatening staff. (*Id.*, at p. 13.) As Plaintiff was being escorted out of the building, he heard Defendant say "I'm throwing all of this guy[']s stuff away!" (*Id.*) Defendant then threw away $1,419.80 worth of Plaintiff's personal property.[3] (*Id.*) Defendant also threw away the receipts for the property so Plaintiff could not prove ownership. (*Id.*) Plaintiff was released from administrative segregation the following day because he had not threatened anyone. (*Id.*, at p. 15.) Upon release to his cell in general population, more than 100 inmates told Plaintiff they saw Defendant push two trash cans in front of Plaintiff's cell and throw away his property. (*Id.*)

On June 6, 2015, Plaintiff notified Defendant that he intended to file an inmate appeal ("IA") against Defendant for throwing away his property. (*Id.*, at p. 16.) Defendant responded that, "if you write me up for throwing away your property, I will make your life a living hell. I will make sure that you will regret it!" (*Id.*) On June 29, 2015, Plaintiff filed an IA with the prison for the property he lost. (*Id.*) Plaintiff stated he was "fearful of reprisals for filing this appeal and may have to be moved out of building # 1." (*Id.*, at pp. 16-17.) From May 15, 2015, to September 5, 2015, Defendant performed 17 searches on Plaintiff's cell, which Plaintiff alleges were "performed solely as a 'punitive measure,' solely to 'harass' me, and solely as a 'reprisal' against me, for filing an appeal against" Defendant. (*Id.*, at 18.) During these searches, Defendant dumped all of Plaintiff's belongings on the floor and poured water and cleaning fluid on them. (*Id.* at 19.)

After searching the cell on the morning of July 14, 2015, Defendant removed every pen and pencil and all the toilet paper from Plaintiff's cell. (*Id.*, at pp. 20-21.) Later that afternoon, Plaintiff complained to Defendant and asked for a pen; Defendant performed a second search of Plaintiff's cell, took $102.70 worth of Plaintiff's personal belongings, and ripped photos of

---

[3] Plaintiff notes that he will file a separate claim in state court for the loss of property. (Doc. 1, p. 13.)

3

Plaintiff's wife off the walls. (*Id*. at 21-22.)

Plaintiff alleges that on May 25, 2015, he was found guilty under an RVR and lost 60 days of dayroom access. (*Id.*, at 34-35.) Plaintiff contends he suffers from a mental disorder for which he takes medication that causes him heat sensitivity. (*Id.*) Plaintiff and other inmates who are sensitive to heat are known as "heat alert inmates," and are not to be outdoors when the temperature exceeds 90 degrees. (*Id.*) Per the orders in *Coleman v. Brown,* a "heat alert plan" was implemented, requiring all heat sensitive inmates to be moved indoors in temperature of 90 degrees or warmer. (*Id.*) Plaintiff alleges that a heat alert plan was called every day during the time he lost dayroom access—May 25, 2015, to July 24, 2015—as the temperature was over ninety degrees every day and included a 10-day stretch of temperatures over 107 degrees. (*Id.*, at 34-35, 39.) Usually, the heat alert plan went into effect around 0930 hours and was not lifted until around 2030 hours, coinciding with the hours of dayroom access and outside time. (*Id.*)

The high temperatures, coupled with Plaintiff's heat sensitivity and loss of dayroom access, resulted in Plaintiff being confined to his cell approximately 24 hours a day from May 25, 2015, to July 24, 2015. (*Id.*, at 36.) During this time, Plaintiff was only allowed out of his cell for 10 minutes at breakfast, 10 minutes at dinner, and 5 minutes to shower. (*Id.*, at 36-38.) This resulted in Plaintiff basically being isolated from other inmates, which was not supposed to happen because of his mental condition. (*Id.*) There were also no fans or air conditioning in the cells, and only a blower that pumped outside air into each cell at the outside temperature. (*Id.*, at 36-37.) As a result, on days that were 90+ degrees outside, Plaintiff's cell was 90+ degrees inside. (*Id.*) When a heat alert plan was in effect, heat alert inmates were supposed to take cool showers several times a day, as Plaintiff's psychiatrist had instructed him. (*Id.*) However, Plaintiff was not able to do so because of the loss of dayroom privileges which required him to ask Defendant for special permission to shower. (*Id.*) Defendant only allowed Plaintiff to shower 15 times between May 25, 2015, and July 24, 2015, despite Plaintiff's request to shower at least once a day. (*Id.*, at 38.) When Defendant allowed Plaintiff to shower, Defendant shut the water off at exactly 5 minutes, when Plaintiff was usually still soapy. (*Id.*, at 38-39.) Because Defendant did not allow Plaintiff frequent access to a cool shower, Plaintiff frequently sat in his

4

cell in a pool of sweat, causing Plaintiff to begin hallucinating and having constant thoughts of suicide. (*Id.*, at 40.) Plaintiff attempted suicide on July 3, 2015. (*Id.*, at 41.) Plaintiff was moved out of the building where Defendant Davis worked on September 15, 2015. (*Id*. at 27.) Plaintiff was placed on "suicide watch" on September 24, 2015, and transferred to the Department of Mental Health at Atascadero State Hospital on October 23, 2015. (*Id*. at 41, 43.)

Plaintiff filed this action in state court, using the forms for an intentional tort cause of action and exemplary damages. (*Id.*, ppl 13, 14.) As discussed below, Plaintiff's allegations suffice to state cognizable claims under section 1983 for deliberate indifference under the Eighth Amendment and retaliation in violation of the First Amendment. Plaintiff may be able to correct some of the deficiencies identified below in his claims. Plaintiff may choose to proceed on the claims found cognizable herein, or he may attempt to cure the defects in his pleading by filing a first amended complaint.

### D. Pleading Requirements

#### 1. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal,* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of *pro se* prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

If Plaintiff chooses to file a first amended complaint, he should make it as concise as possible in **no more than twenty-five (25) pages**. Plaintiff should state which of his constitutional rights he believes Defendant violated and the facts to support each claim. Plaintiff need not and should not cite legal authority for his claims in a first amended complaint. If Plaintiff files a first amended complaint, his factual allegations will be screened under the legal standards and authorities set forth in this order.

### 2. Exhibits

Although Plaintiff refers to exhibits throughout his Complaint, none were submitted with Defendant's notice of removal. (*See* Doc. 1.) If Plaintiff chooses to file a first amended complaint, he may use exhibits with the first amended complaint, but need not do so. The Court is not a repository for the parties' evidence. Originals, or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) need not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the Court). If Plaintiff attaches exhibits to his amended complaint, each exhibit must be specifically referenced. Fed. R. Civ. Pro. 10(c). For example, Plaintiff must state "see Exhibit A," or a similar notation, to direct the Court to the specific exhibit Plaintiff is referencing.

Further, if the exhibit consists of more than one page, Plaintiff must reference the specific page of the exhibit (i.e. "See Exhibit A, page 3").

The submission of evidence at this juncture is premature, as Plaintiff is only required to state a prima facie claim for relief. Plaintiff is reminded that, for screening purposes, the Court must assume that Plaintiff's factual allegations are true. It is unnecessary for a plaintiff to submit exhibits in support of the allegations in a complaint. If Plaintiff chooses to file a first amended complaint, he may simply state the facts upon which he alleges Defendant has violated his constitutional rights and refrain from submitting exhibits.

### 3. Linkage and Causation

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between Defendant's actions or omissions and a violation of Plaintiff's federal rights. *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

Plaintiff's allegations must demonstrate that Defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe*, 627 F.3d at 342. But the mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

7

# DISCUSSION

**A. Claims**

    **1. First Amendment**

        **a. Retaliation**

The First Amendment protects inmates from retaliation for engaging in protected conduct. A retaliation claim has five elements. *Waitson v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.2009).

First, the plaintiff must allege that the retaliated-against conduct is protected. *Id.* The filing of an inmate grievance is protected conduct, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech or to petition the government, *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Even merely threatening to engage in protected conduct suffices. *Entler v. Gregoire*, --- F.3d ---, 2017 WL 4448218, *6 (9th Cir. October 6, 2017) (citing *Jones v. Williams*, 791 F.3d 1023, 1035-36 (9th Cir. 2015). Inmates may not be disciplined for making any such statements, even if stated as a threat. *Entler*, at *6, (citing *Hargis v. Foster*, 312 F.3d 404, 411 (9th Cir. 2002).) Second, the plaintiff must show the defendant took adverse action against the plaintiff. *Rhodes*, at 567. Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. *Waitson*, 668 F.3d at 1114. Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).

Plaintiff states a cognizable retaliation claim against Defendant for the excessive number of times and manner in which Defendant searched Plaintiff's cell and for not allowing Plaintiff to

take cool showers when the temperatures were above 90 degrees, even though Plaintiff is a heat sensitive inmate and had no dayroom access between May 25, 2015, and July 24, 2015. Any cognizable claim would be based on the events that allegedly occurred after June 29, 2015, when Plaintiff filed the inmate appeal against Defendant.[4]

### 2. Eighth Amendment

#### a. Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference. . . ." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer* at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Although the Constitution " 'does not mandate comfortable prisons,' " *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 349), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly

---

[4] If had Plaintiff filed an inmate appeal against Defendant before May 26, 2015, more of his allegations would be cognizable.

9

over a lengthy course of time," *Howard*, 887 F.2d at 137. Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson*, 501 U.S. at 304-05 (comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day), with *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) (outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day)). To say that some prison conditions may interact in this fashion is far from saying that all prison conditions are a seamless web for Eighth Amendment purposes. *Id.* Amorphous "overall conditions" cannot rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Id.*

The conditions to which Plaintiff was allegedly subjected must be evaluated to determine whether they demonstrate a deprivation of a basic human need individually, or in combination. Plaintiff's allegations demonstrate that because he lost day room privileges and was heat sensitive, he was confined to his cell 24/7, other than to get breakfast and dinner and to take a shower from May 25, 2015, to July 24, 2015. Plaintiff's allegations further reveal that his cell was roughly the same temperature as outside because there were no fans or air conditioning, and the blower simply pushed outside air into the cells. On days where the temperature soared to 100+ degrees, Plaintiff was allegedly subjected to outside air being pushed into his cell at nearly the same temperature. "Inadequate 'ventilation and air flow' violates the Eighth Amendment if it 'undermines the health of inmates and the sanitation of the penitentiary.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998) (quoting *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985)). Further, since inadequate heating is cognizable, *see Wilson v. Seitzer*, 501 U.S. 294, 298 (1991), it stands to reasons that, particularly in the summer months, in the Central San Joaquin Valley where heat-stroke is a real danger, allegations of being subjected to conditions without adequate cooling for an extended period are likewise cognizable. Leniently construed, Plaintiff's allegations regarding

the temperatures and conditions to which he was subjected in his cell from May 25, 2015, to July 24, 2015, satisfy the objective element of an Eighth Amendment claim. Although Plaintiff alleges that Defendant did not allow him access to showers as needed, he states he was permitted to shower a total of 15 times from May 25, 2015, to July 24, 2015. This time-period totals roughly 8 and a half weeks, so Plaintiff's allegations equate to receiving a shower roughly every four days, which does not rise to the level of an objectively serious harm. *See, e.g., Davenport v. De Robertis*, 844 F.2d 1310, 1316 (7th Cir.1988) (holding that Constitution only requires one shower per week without extenuating circumstances); *Clark v. Williams*, 2011 WL 304585 at *2 (D.Nev.2011) (finding deprivation of shower for five days did not state an Eighth Amendment claim); *Lipsey v. Schwarzenegger*, 2009 WL 5030136 at *4 n. 2 (E.D.Cal.2009) (deprivation of shower for four and a half days may not state an Eighth Amendment claim).

Subjectively, a plaintiff must show that prison officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson*, 501 U.S. at 303; *Labatad*, 714 F.3d at 1160; *Johnson*, 217 F.3d at 733. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). Plaintiff's allegations that there were no fans or air-conditioning and that the blower simply pushed in outside 90+ degree heat, make the risk of excessive heat obvious enough to establish knowledge by correctional personnel assigned to Plaintiff's cell area, such as Defendant. As such, Plaintiff's allegations state a cognizable Eighth Amendment claim against Defendant.

11

### b. Serious Medical Needs

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); *accord Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). For screening purposes, Plaintiff's heat sensitivity and mental condition which required Plaintiff to take medication is accepted as a serious medical need.

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.*, at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a

prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett,* 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

Plaintiff's allegations fail to show that Defendant knew of Plaintiff's mental condition which required him to take medication that made him sensitive to heat, or that Plaintiff was sensitive to heat in any way—let alone that Defendant was deliberately indifferent to either of Plaintiff's conditions.

### 3. Inmate Appeals

A portion of Plaintiff's Complaint is devoted to describing his efforts pursuing various inmate appeals he filed based on the circumstances alleged in this action. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by

state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez v. DeRobertis*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal generally cannot serve as the basis for liability under a § 1983 action. *Buckley*, 997 F.2d at 495. Since Plaintiff cannot state a cognizable claim based on the handling of his inmate appeals, he need not and should not state specific allegations in this regard, if he chooses to file a first amended complaint.

### 4. Claims Under California Law

#### a. California Tort Claims Act

Under the California Government Claims Act ("CGCA")[5] set forth in California Government Code sections 810 et seq., a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the California Victim Compensation and Government Claims Board ("VCGCB" or "Board"), and the Board acted on the claim, or the time for doing so expired. "The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity." *Munoz v. California*, 33 Cal.App.4th 1767, 1776 (1995). The purpose of this requirement is "to

---

[5] The Government Claims Act was formerly known as the California Tort Claims Act. *City of Stockton v. Superior Court*, 42 Cal.4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of San Jose v. Superior Court*, 12 Cal.3d 447, 455 (1974) (citations omitted). Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official. *State v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1244 (2004). In the state courts, "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." *Id*. at 1239, 13 Cal.Rptr.3d 534, 90 P.3d 116 (fn.omitted).

Federal courts likewise must require compliance with the CGCA for pendant state law claims that seek damages against state public employees or entities. *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir.1969); *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1477 (9th Cir.1995). State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were first presented to the state in compliance with the claim presentation requirement. *Karim–Panahi v. Los Angeles Police Department*, 839 F.2d 621, 627 (9th Cir.1988); *Butler v. Los Angeles County*, 617 F.Supp.2d 994, 1001 (C.D.Cal.2008). Plaintiff's allegation that he filed a claim with the Government Claims Board on July 28, 2015, that was denied, suffices on screening. (Doc. 1, at 34.)

**b.     Intentional Infliction of Emotional Distress ("IIED")**

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (quotation marks omitted); *Tekkle v. United States*, 567 F.3d 554, 855 (9th Cir. 2007); *Simo v. Union of Needletrades, Industrial & Textile Employees*, 322 F.3d 602, 621-22 (9th Cir. 2003). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Corales*, 567 F.3d at 571; *Tekkle*, 511 F.3d at 855; *Simo*, 322 F.3d at 622.

In addition to the requirement that the conduct be intentional and outrageous, Defendant must have been aware of the conduct which must have been directed at Plaintiff, or have occurred in Plaintiff's presence. *Simo*, 322 F.3d at 622. Plaintiff fails to state any allegations to show which of Defendant's actions he believes equate to intentional infliction of emotional distress, let alone state any allegations to show Defendant's intent to inflict emotional distress.

### c. Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1156 (9th Cir. 2013); *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001); *see also Watison v. Carter*, 668 F.3d 1108, 1117-18 (9th Cir. 2012) (even in the presence of cognizable federal claim, district court has discretion to decline supplemental jurisdiction over novel or complex issue of state law of whether criminal statutes give rise to civil liability). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). If Plaintiff is able to state a cognizable claim under California law, this Court will only exercise jurisdiction over any such claims as long as Plaintiff has federal claims pending.

### CONCLUSION

Plaintiff is given the choice to file a first amended complaint, or proceed on the retaliation and conditions of confinement claims found cognizable against Defendant and dismiss all other claims. Plaintiff must either notify the Court of his decision to proceed on these cognizable

claims, or file a first amended complaint within **twenty-one (21) days** of the service of this order. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than **twenty-one (21) days** from the date of service of this order.

If Plaintiff chooses to file a first amended complaint, he must demonstrate how the conditions of which he complains resulted in a deprivation of his constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). The first amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

A first amended complaint should be brief, Fed. R. Civ. P. 8(a), and **may not exceed twenty-five pages in length**. Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is cautioned that an amended complaint supercedes all prior complaints filed in an action. *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220. The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not, however, change the nature of this suit by adding new, unrelated claims in a first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is **HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **twenty-one (21) days** from the date of service of this order, Plaintiff must

either:

    a. file a first amended complaint curing the deficiencies identified by the Court in this order, or

    b. notify the Court in writing that he does not wish to file a first amended complaint and wishes to proceed only on the retaliation and conditions of confinement claims against Defendant C. Davis, identified by the Court as viable/cognizable in this order, dismissing all other claims; and

3. **If Plaintiff fails to comply with this order, he will be allowed to proceed only on the claims found cognizable herein and a recommendation will issue that all other claims be dismissed with prejudice**.

IT IS SO ORDERED.

Dated: **March 19, 2019**  /s/ *Sheila K. Oberto*
                                                           UNITED STATES MAGISTRATE JUDGE